426

Ghent SANDERFORD, Appellant,

v.

HUMBLE OIL & REFINING COMPANY
et al., Appellees.

No. 3116.

Court of Civil Appeals of Texas.

Eastland.

Dec. 17, 1954.

Rehearing Denied Jan. 7, 1955.

John D. Cofer and Ghent Sanderford, Austin, for appellant.

Dillard Baker, Houston, Boyle, Wheeler, Gresham, Davis & Gregory, San Antonio, Scarborough, Yates, Scarborough & Black, Abilene, Eugene Adair, Ft. Worth, Thomas Black, Asst. Atty. Gen., for appellees.

COLLINGS, Justice.

Ghent Sanderford filed an application to lease for oil and gas and other minerals under the provisions of Article 5421c, Vernon's Texas Revised Civil Statutes, certain lands which he alleged were vacant and unsurveyed, situated between the East Boundary Line of Survey No. 2, Block 1, T. & N. O. Ry. Co. Survey in Stonewall County and the Brazos River. Ross Corlett, a State Licensed Land Surveyor, was appointed by the Land Commissioner to make a survey of the area and his report, field notes and plat were filed with the Land Commissioner showing the existence of a vacancy, as alleged. Upon a hearing before the Examiner in the Land Office, it was found that the alleged vacancy did not exist. Ghent Sanderford duly appealed from the decision of the Land Commissioner to the District Court of Stonewall County, and named the Humble Oil & Refining Company, the Commissioner of the General Land Office of the State of Texas, and numerous other parties as defendants. The case was tried before the court without a jury and judgment rendered that plaintiff, Ghent Sanderford, take nothing. This appeal is brought from such judgment.

The field notes of Survey Nos. 1, 2 and 3, Block 1, T. & N. O. Ry. Co. Survey in Stonewall County, Texas, were made by the locating Surveyor J. J. Metcalfe in 1874. The West line of such Surveys were along the East Line of the Manuella Cordova Survey. The field notes of Survey No. 2 are as follows:

"Beginning at the Northwest corner of Sur. No. 1; Thence East 2500 varas to corner, a stake; Thence down the river with its meanders N. 28¼ East, 471 varas to corner, a stake; Thence N. 952 varas to corner, a stake; Thence W. 2722 varas to corner, a stake; Thence S. 1367 varas to place of beginning."

The following is substantially a likeness of a portion of the map filed by Surveyor Ross Corlett. The shaded portion shows the land claimed by appellant to be vacant:

It was found by the court that:

"VI—no part of the land alleged to be vacant by the plaintiff is in fact vacant land but that all of the land sued for by plaintiff is within the boundaries of T. & N. O. R. R. Company Survey No. 2, Block 1, Cert. 860, (Joseph B. Wile, No. 2, Abstract 455), Stonewall County, Texas, both as said boundaries were located on the ground by the locating surveyor, J. J. Metcalfe, January 20, 1874, and by his corrected field notes of October, 1874, and also within the boundaries of the field notes contained in the Patent subsequently granted and issued by the State of Texas to Yates Ferguson, Trustee and assignee of Joseph B. Wile, dated January 5, 1883, and also within the boundaries of said survey as shown and delineated on the maps of Stonewall County, Texas, filed in the General Land Office.

"VII. I find that the west bank of the Salt Fork of the Brazos River in relation to the T. & N. O. R. R. Company Survey No. 2, Block 1; Stonewall County, Texas, was not west of its present location when said survey was surveyed by J. J. Metcalfe on January 20, 1874, or at any time subsequent thereto."

In points 2, 3 and 4, appellant complains of the holding of the court in regard to the East boundary line of Survey No. 2. He contends that the court "erred in holding that the East boundary line of Survey No. 2 meanders the West bank of the Brazos River." He particularly urges error in the holding that the third call in the original field notes meanders the river, and the failure to hold that such third call runs due North 952 varas.

The second and third calls in the original field notes constitute the East line of Survey No. 2 and are as follows:

"Thence North with the meanders of the river 28¼ East 471 varas a stake, a corner; North 952 varas, a stake, a corner."

Appellant contends that these two calls are plain and unambiguous and mean just what they say; that their meaning is not open to construction; that the Northeast corner of Survey No. 2 is at the point marked on the map by the letter "U" which is 252 varas West of the present river bank.

In the first place, we do not understand the holding of the court to be that any portion of the East boundary line of Survey No. 2, as surveyed by Metcalfe in 1874, meanders the present West bank of the Brazos River. Appellees' theory of the case is that at the time Metcalfe made his survey the East boundary line of Survey No. 2 did meander the then West bank of the Brazos River, but that such West bank has since that time encroached upon Survey No. 2 all along the East line and is now at all places West of its location in 1874. The court further found that when Metcalfe made his survey in 1874 the West bank of Brazos River in relation to Survey No. 2 was not West of its present location. These findings are supported by evidence which we do not deem it necessary to discuss in detail. We do, however, point out that the second call in the description of Survey No. 2 by its own terms "meanders—the river" and that the North terminal of such call which is the beginning point of the third call was, therefore, necessarily on the river. That the Northern terminal of the third call which is the Northeast corner of Survey No. 2 was also on the river as shown by the fact that the beginning point and first call of adjoining Survey No. 3, made at the same time and by the same surveyor, J. J. Metcalfe, is as follows: "Beginning at the N.E. Cor. of No. 2; Thence down the river with its meanders * * *." It thus appears that the Southeast corner and the Northeast corner of Survey No. 2 are both shown to have been on the river in 1874; that the two lines designating the East boundary line of such Survey both began and ended on the river and one of the lines by its own terms meandered the river. We overrule appellant's second, third and fourth points.

The controlling consideration, in our opinion, is that the burden rests upon

appellant to establish the existence of the vacancy and since the court has found there is no vacancy, its existence must be conclusively established by the evidence before the findings and judgment of the trial court to the contrary can be disturbed. The evidence does not conclusively establish the existence of the alleged vacancy.

We agree with appellant's theory as stated in his brief that his case turns upon the proper location of the Southeast corner of Survey No. 2 as placed by the original surveyor, Metcalfe, in 1874. We do not, however, agree with his contention that the Southeast corner of Survey No. 2 is at the Point "H" as located and shown on Corlett's plat, or at the present bank of the river which is designated on the plat as point "J".

In appellant's points Nos. 1 and 5, it is urged, in effect, that the court erred in failing to hold that the Southeast corner of Survey No. 2, T. & N. O. R. R. Co. Survey is at that place on the ground shown on Corlett's map as "H" and that the court erred in holding that the land lying between the second call from point "H" the third call and the Brazos River is not vacant and unsurveyed.

The testimony and exhibits relied upon by appellant to show that point "H", as located on Corlett's plat is the Southeast corner of Survey No. 2, is principally the evidence relied upon to show the vacancy. Such evidence, in our opinion is far short of a conclusive showing that point "H" is the Southeast corner of said Survey No. 2, and that a vacancy exists.

Point "H" as shown by Corlett's plat, is in the south line of Survey No. 2 and is 2,083 varas East of the Southwest Corner of Survey No. 2. It is 417 varas short of Metcalfe's called distance for such south line. The basis of appellant's contention that point "H" is the Southeast corner of Survey No. 2 is the testimony of Corlett that he found "a bank there from 4 to 5 feet in height," and that such bank "followed generally, without a large variation, the second call in the T. & N. O. R. R. Co. No. 2 Survey field notes." Appellant

contends that this bank was the bank of the river at the time of Metcalfe's survey; that such bank is a natural object called for in the second call of the description and that point "H" which is on such bank at its intersection with the south line of Survey No. 2 marks and identifies the location of the Southeast corner of such tract; that a call for a natural object will control a call for distance and that Metcalfe's survey of the south line of the tract in question was, therefore, stopped as a matter of law at point "H". Appellant further urges the theory that Metcalfe must have been mistaken about the location of the East boundary line of the Cordova survey which was made the West boundary line of the three T. & N. O. R. R. Co. Surveys, and upon which is located the Southwest corner of Survey No. 2 and the beginning point in the description of such tract.

It is conceded by appellant that the exact location of the East boundary line of the Cordova Survey was fixed by a final judgment in a suit in the District Court of Stonewall County referred to as the Roy Day judgment. This line, as fixed in such judgment, is about 400 varas East of where it was erroneously located by some surveys which are shown to have been made. It is appellant's contention, as we understand, that Metcalfe, at the time of his survey, thought that the East line of the Cordova Survey was about 400 varas West of its true location and used the mistaken location as the beginning point in the field notes describing Survey No. 2. Appellant's contention in this connection is stated in his brief as follows:

"That the line fixed in this judgment (Roy Day Judgment) as the East line of the Cordova was about 400 varas East of the East line of the Cordova as found by Metcalfe and other surveyors, cannot be doubted. This is proven by the fact that the North and South line of these surveys are about 400 varas shorter when measured from the East line of the Cordova as fixed by the judgment of the Court in the Roy Day suit as compared with the field notes of these

three surveys as surveyed by Metcalfe, unless we adopt the theory of the Appellees that the North and South lines of these surveys extended into and across the bed of the Brazos River. It is a valid presumption of law that Metcalfe did not cross the Brazos River because to do so would be saying that Metcalfe violated the provisions of Article 5302, R.C.S.

\* \* \* \* \* \*

"The South line of Survey No. 1 goes East 1900 varas. It will be noted that the South line does not call for the Brazos River and the River is nowhere mentioned, but if we take the East line of the Cordova to be where the Roy Day judgment fixes it, then the South line of No. 1 Survey would extend far out into the bed of the Brazos River. All of this goes to prove that Metcalfe understood and believed the East line of the Cordova was further West by some 400 varas than where the line was fixed by the Day Judgment. As stated above, the point is not where the Court located the East line of the Cordova, but where Metcalfe took the East line to be when he made the surveys of Nos. 1, 2 and 3. Of course if Metcalfe had begun the South line of No. 1 on the East line of the Cordova as fixed by the Roy Day judgment, the southeast corner of No. 1 would have been far out into the bed of the Brazos River as reflected by the recent official maps of Stonewall County."

It should here be again noted that although the first call of Survey No. 2 which describes the South line of such Survey does not call for the Brazos River, the second call is "thence North with the meandors of the river \* \* \*" and, therefore, clearly shows that the East end of the South line of Survey No. 2 as surveyed by Metcalfe in 1874 was on the West bank of the river. Actually, appellant's own theory of the case that point "H" is the Southeast corner of Survey No. 2 is based upon the assumption that such Southeast corner was on the river bank.

The burden of proof was on appellant as plaintiff to show the existence of the vacancy as alleged and claimed in his pleadings. The evidence relied upon by appellant is consistent with his theory as to the location of the Southeast corner and the East line of Survey No. 2 at Point "H" and may have to some degree rendered his theory probable. It did not, however, conclusively establish the location of such Southeast corner and East line as contended by him, which is required before we may overturn the finding and judgment of the court to the contrary.

The evidence relied upon by appellant, even if considered alone, is not conclusive that on January 20, 1874, when Metcalfe made his survey the ridge upon which Corlett's point "H" is located was the West bank of the Brazos River. Such point is not conclusively shown to be a natural object then marked and identified by Metcalfe as the Southeast corner of Survey No. 2. It is not, therefore, a call for a natural object which will control a call for distances.

If the evidence relied upon by appellant to show that point "H" is the Southeast corner of Survey No. 2 was sufficient to raise an issue of fact (which we do not hold) then that issue has been found against appellant by the trial court, and the finding is supported by evidence. B. W. Boren, a State Licensed Surveyor, testified to the effect that the elevation of the present bank of the river is 3.1 feet above the water level; that about 640 varas west of the present river there is a high bank of about 27 feet; that between this high bank and the river the land is relatively flat and is flooded when there is a rise in the river of as much as five feet; that in this flat area are numerous ridges, including the ridge upon which point "H" is located, that might be referred to as banks; that several of these ridges are higher compared to the depression adjacent to them than the ridge at point "H" as compared to the depression adjacent to it. A map of the T. & N. O. R. R. Survey Nos. 1, 2 and 3 drawn according to the original field notes of Metcalfe's 1874 survey,

with the West line and the Southwest corner of Survey No. 2 located on the East line of the Cordova Survey as established by the Roy Day judgment, was introduced in evidence by appellees. It was demonstrated that such map when superimposed upon General Land Office maps of 1872 and 1873 shows the Brazos River to have been a relatively narrow stream at that time; that Survey No. 1 did not reach the river and that Survey No. 2 did not extend into or cross the stream.

This evidence was inconsistent with appellant's theory that point "H" was on the West bank of the Brazos River in 1874, and was the Southeast corner of Survey No. 2, and inconsistent with appellant's theory as to the existence of a vacancy.

Appellant's contention that Metcalfe was mistaken about the location of his beginning point on the east line of the Cordova Survey is likewise untenable. The basis of this contention is the assumption that if the beginning point in the description of Survey No. 2 is on the true East line of the Cordova Survey as established in the Roy Day case, that the South line of such survey would extend into and across the Brazos River in violation of Article 5302, R.C.S. As previously noted, there is no positive evidence of the location bed of the Brazos River at this point in 1874 other than that indicated in the description and field notes of Survey No. 2 and other surveys abutting the river and General Land Office maps of 1872 and 1873. These exhibits show the Brazos River to have been a relatively narrow stream at that time and contradict appellant's contention that either Survey No. 1 or Survey No. 2 of the T. & N. O. R. R. Co. Land extended into and across the Brazos River.

We have been unable to find any evidence in support of appellant's alternative contention that the present West Bank of the river at the place designated on the plat as point "J" is the Southeast corner of Survey No. 2 as established in 1874. There is no conclusive showing that the West bank of the Brazos River on July 20, 1874 was at any point other than at "East 2500

varas" from the beginning point of Survey No. 2, which was also the Southwest corner of the tract surveyed and located on the East boundary line of the Cordova Survey.

The judgment of the trial court is affirmed.